PATRICK H. HICKS, ESQ., Bar # 4632
SANDRA KETNER, ESQ., Bar # 8527
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
Telephone:     702.862.8800
Fax No.:         702.862.8811

Attorneys for Defendant
VICTORIA PARTNERS dba
MONTE CARLO RESORT AND CASINO

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CLAUDIA CARLSON and JOSHUA HALL,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO,<br><br>Defendant. | Case No. 2:13-cv-00378-JCM-PAL<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION** |

Defendant Victoria Partners d/b/a Monte Carlo Resort and Casino (hereinafter "Defendant" or "the Monte Carlo") hereby moves for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure on Plaintiffs Claudia Carlson's and Joshua Hall's claims.  This Motion is made and based upon the accompanying Memorandum of Points and Authorities, the exhibits attached hereto, all pleadings and papers on file herein, as well as any oral argument that this Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This law suit is a meritless concoction of fabrications designed to extract money from the Monte Carlo.  Plaintiffs secretly tape-recorded scores of conversations (perhaps 500 or more) with their co-workers.  Exhibit 1 (Declaration of Patrick Hicks in Support of Defendant's Motion for

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

1  Summary Judgment ("Hicks Decl.") at ¶6); Exhibit 2 (Videotaped Deposition of Claudia Carlson

2  ("Carlson Depo.") at 31:23-32:1, 34:8-16); Exhibit 3 (Videotaped Deposition of Joshua Hall ("Hall

3  Depo.") at 71:15-17, 75:5-76:1).  Plaintiffs secretly tape-recorded the conversations for the express

4  purpose of building a lawsuit.  Plaintiffs repeatedly bragged that they were going to "own" the

5  Monte Carlo and never have to work another day in their lives.  Plaintiffs, working with their East

6  Coast lawyers, requested to bypass the U.S. Equal Employment Opportunity Commission's

7  administrative investigation process so that they could race to this Court in an attempt to ring the bell

8  for the big bucks.  Plaintiffs, in their Complaint and elsewhere, have repeatedly stated that they

9  captured racial epithets on their secret tape-recordings—something that has been proven in the

10  discovery process to be a total lie.  Exhibit 4 (Stutchman Report & Transcript).

11       Plaintiffs' counsel immediately retained a psychiatrist to examine the Plaintiffs in order to

12  conclude that both suffered from severe emotional distress directly attributable to the imagined racial

13  and sexual harassment.  The psychiatrist came to his conclusions even though he has never

14  personally met either of the Plaintiffs and even though he did not administer *a single test*.  When

15  deposed, one Plaintiff could not remember a thing about her alleged harassment until after she was

16  coached by her attorney.  The other Plaintiff, when questioned about his racial and sexually

17  inappropriate comments that undermine his allegations, claimed to have an alter ego who was

18  responsible for the language.  One cannot imagine a more manufactured lawsuit and a bigger waste

19  of judicial resources.

20       Plaintiffs' goal is to fabricate claims thereby creating an alleged issue of disputed facts in

21  order to survive summary judgment. There is, however, absolutely no way this suit should survive

22  summary judgment as it is exactly the type of abuse of the judicial process that courts have

23  discouraged.  As the Nevada Supreme Court has noted:

24

25       The word "genuine" has moral overtones. We do not take it to mean a
    fabricated issue. Though aware that the summary judgment procedure
26       is not available to test and resolve the credibility of opposing witnesses
    to a fact issue, we hold that it may appropriately be invoked to defeat a
27       lie from the mouth of a party against whom the judgment is sought,
    when that lie is claimed to be the source of a genuine issue of fact for
28       trial.

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

2.

1

2   *Aldabe v. Adams, 81 Nev. 280, 285* (Nev. 1965).

3   Before we address the substantive legal issues that warrant the granting of summary

4   judgment, a fair deal of factual background should be helpful to the Court.   Plaintiffs Claudia

5   Carlson ("Carlson"), a Hispanic female, and Joshua Hall ("Hall"), an African-American male, were

6   previously employed by the Monte Carlo as ushers in the showroom.   On March 7, 2013, Plaintiffs

7   filed a Complaint asserting the following causes of action: 1) a racially hostile work environment in

8   violation of 42 USC §1981; 2) sexual harassment in violation of Title VII of the Civil Rights Act of

9   1964 ("Title VII"); 3) retaliation in violation of 42 USC §1981; 4) retaliation in violation of Title

10   VII; and 5) constructive discharge in violation of 42 USC §1981 (on behalf of Hall only).   *See*, Civil

11   Action Complaint (Dkt. 6).   Defendant denies all of Plaintiffs' allegations and asserts that Plaintiffs'

12   claims are manufactured for monetary gain.

13   As set forth in detail below, Plaintiffs' allegations are insufficient as a matter of law to

14   constitute actionable hostile work environment claims based upon their sex and/or race.   Plaintiffs

15   failed to provide sufficient detail during their depositions to constitute cognizable claims for

16   harassment.   Only after lengthy breaks with their legal counsel did Plaintiffs even provide additional

17   details in response to their counsel's clearly leading questions.   Hicks Decl. at ¶¶3-4.   Plaintiffs'

18   testimony in this regard is akin to a "sham affidavit" and should be disregarded by this Court.

19   Nevertheless, Plaintiffs' "evidence" - even that which was elicited as a result of improper tactics by

20   their counsel - remains insufficient to defeat Defendant's Motion for Summary Judgment.

21   Moreover, Hall's sexual harassment claim should be dismissed due to his failure to exhaust his

22   administrative remedies.

23   Additionally, Plaintiffs' claims for retaliation fail because they have no evidence of a causal

24   connection between their protected activity and adverse employment actions or pretext.   All of

25   Plaintiffs' supervisors and co-workers who were deposed in their matter vehemently denied that

26   Plaintiffs were subjected to any discrimination, harassment or retaliation.   Rather, those witnesses

27   testified that Plaintiffs concocted this lawsuit – including Carlson's involuntary and Hall's voluntary

28   terminations from the Monte Carlo- for the purpose of financial gain.   Because Plaintiffs' deficient

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   claims should not proceed to a jury, Defendant requests that this Court enter judgment in its favor on

2   all of Plaintiffs' claims.

3   **II.**    **STATEMENT OF UNDISPUTED FACTS**

4      **A.**    **Plaintiffs' Employment with the Monte Carlo**

5      Carlson commenced her employment with the Monte Carlo as a retail sales host in June

6   2003. Carlson subsequently transferred to the position of usher. Carlson Depo. at 59:11-16, 102:10-

7   15. Hall commenced his employment with the Monte Carlo as an usher on or about May 10, 2005.

8   Hall Depo. at 30:9-15.

9      During their employment, Plaintiffs secretly recorded conversations in the workplace.

10  Carlson Depo. at 31:23-32:1; Hall Depo. at 71:15-17.[1] Plaintiffs could not remember in which

11  year(s) they secretly recorded the workplace conversations. Plaintiffs could not recall how many

12  conversations they recorded. In fact, Plaintiffs each admitted that they could have recorded more

13  than 500 workplace conversations. Hall did not even know whether he retained all of the recordings

14  or whether some were destroyed—despite a clear legal obligation to preserve such documents.

15  Carlson Depo. at 33:1-17, 34:5-16; Hall Depo. at 71:18-23, 73:10-74:4, 75:2-76:7.

16      Carlson admitted at her deposition that her whole purpose in secretly tape-recording

17  conversations was so that she could "prove" that she was being subjected to discrimination.

18  However, Carlson could not even recall whether she gave any of the secretly recorded conversations

19  to any member of the Monte Carlo's management or human resources department. Carlson Depo. at

20  88:5-89:3. In this litigation, Plaintiffs produced over 51 recordings (31 of which were produced on

21  the eve of Carlson's deposition after normal business hours and months after they were requested in

22  discovery). The 51 recordings entail more than 18 hours of taped conversations. Ultimately,

23  Plaintiffs have only identified one of the 51 recordings as including an allegedly discriminatory

24  remark—something that discovery has proven to be a blatant misrepresentation. Hicks Decl. at ¶6;

25  Exhibit 4.

26      Plaintiffs claim that one of the recordings includes a statement from one of their former co-

---

[1] Carlson used her iPhone to secretly record workplace conversations. Hall purchased a mini tape recorder that he could conceal to secretly record the conversations. Carlson Depo. at 33:21-34:4; Hall Depo. at 74:6-75:1.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   workers, Patty Perry, allegedly calling Hall "the N word" and saying "f*** that nigger" in the

2   women's restroom.  Carlson Depo. at 39:16-40:1; Hall Depo. at 123:3-129:6; Complaint at ¶48.[2]

3   However, the restroom recording relied upon by Plaintiffs as the primary basis for their lawsuit

4   *without question does not* contain the use of the N word as demonstrated by Defendant's forensic

5   audio analysis expert, Gregg M. Stutchman.  Exhibit 4.[3]  Despite a lot of bravado by Plaintiffs and

6   their counsel at the commencement of this case, Plaintiffs now concede that none of the other 50

7   recordings of their co-workers (and presumably none of the perhaps 500 plus that they can't find

8   now) includes any racially or sexually offensive comments.  Hicks Decl. at ¶6.

9       Plaintiffs' secret recordings as well as their manufacturing of this key piece of evidence (the

10  restroom recording) demonstrates their unabashed willingness to fabricate claims of discrimination

11  and retaliation against the Monte Carlo.  Moreover, Plaintiffs demonstrated their motivation of

12  monetary gain by bragging about their suit against the Monte Carlo to multiple co-workers on many

13  occasions.  Specifically, Jose Guzman, Plaintiffs' former co-worker who is of Mexican and Cuban

14  descent, testified that Plaintiffs stated they could not wait to get fired so that they could file for

15  unemployment and then sue the Monte Carlo.  Exhibit 5 (Deposition of Jose Guzman ("Guzman

16  Depo.") at 11:25-12:9, 99:23-100:3, 114:1-14).  Plaintiffs also stated on nearly a daily basis that they

17  were going to "own" the Monte Carlo and would never have to work again.  Guzman Depo. at

18  100:5-14, 114:19-115:3, 127:6-15.

19      Sharon Jones-Ono, Plaintiffs' former co-worker whose husband of 30 years is of Brazilian

20  descent, frequently heard Plaintiffs say that they were going to own the Monte Carlo.  Exhibit 6

21  (Deposition of Sharon Jones-Ono ("Jones-Ono Depo.") at 25:21-26:6, 27:1-6).  Likewise, Patricia

22  "Patty" Perry, Plaintiffs' former co-worker whose family is "very racially mixed," heard Plaintiffs

23  say numerous times that they were going to "own this place" (referring to the Monte Carlo) and

24  would never have to work again when they are done with the Monte Carlo.  Exhibit 7 (Deposition of

25  Patricia Diane Perry ("Perry Depo.") at 11:13-12:16, 34:20-23).  Arianna Basulto Leon, Plaintiffs'

---

[2] Perry never said Hall's name but Carlson *assumed* that Perry was referring to Hall because Hall was the only African-American in the department.  Carlson Depo. at 186:25-188:7.

[3] Mr. Stutchman's report reflects what was actually said on the recording - "oh yeah, I'll call you later" <u>not</u> "f*** that nigger."  Exhibit 4.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

5.

former co-worker who is of Cuban descent, also heard Plaintiffs say that they were going to own the Monte Carlo and would never have to work again.  Exhibit 8 (Deposition of Arianna Basulto Leon ("Basulto Leon Depo.") at 30:19-22, 34:18-35:2).

Similarly, Mary Jane Richardson, Plaintiffs' former co-worker, "constantly" heard Plaintiffs say that they will never have to work again because they will own the Monte Carlo.  Exhibit 9 (Deposition of Mary Jane Richardson ("Richardson Depo.") at 33:22-34:3, 42:25-43:3, 44:15-23). Furthermore, Manuel Quiroga, Plaintiffs' former supervisor who is of Puerto Rican and Mexican descent, received complaints from Plaintiffs' co-workers that Plaintiffs bragged about owning the Monte Carlo and "making a lot of money from this place."  On multiple occasions, Carlson told Quiroga "why don't you just fire me?"  Exhibit 10 (Videotaped Deposition of Manuel Quiroga ("Quiroga Depo.") at 35:6-23, 38:1-14, 105:23-106:6, 115:14-18).  Plaintiffs' motive to try to manufacture claims comes straight out of their own months—money, money, money.

Plaintiffs' manufactured claims are further driven by the tactics of their East Coast legal team.  When Hall filed his Charge of Discrimination, he asked the U.S. Equal Employment Opportunity Commission ("EEOC") to investigate his allegations.  However, Plaintiffs' counsel subsequently requested the EEOC to issue a notice of right to sue prior to completion of the EEOC's investigation in order to directly pursue litigation against the Monte Carlo.  Hall Depo. at 211:23-213:20; Exhibit 11 (Correspondence between Rebecca Houlding and Jake DeMarco; MC000326-MC000327).  To manufacture the appearance of damages, Plaintiffs retained Robert L. Goldstein, a New York psychiatrist who did not even examine Plaintiffs in person or conduct a single basic test. Instead, Dr. Goldstein chatted with Plaintiffs via Skype for purposes of rendering an "opinion" regarding their psychiatric conditions.  Dr. Goldstein admittedly was unable to observe Plaintiffs' entire body language and demeanor during his "examinations."  Exhibit 12 (Deposition of Robert L. Goldstein ("Goldstein Depo.") at 22:19-23:9, 24:17-20, 25:9-12, 28:12-29:13, 95:10-17, 96:17-19). It is totally unacceptable in the medical and psychiatric community to conduct such critical interviews in this manner. Exhibit 13 (Declaration of Joann Behrmann-Lippert, Ph.D.)

**B.**   **Carlson's Alleged "Evidence" of Harassment and Retaliation**

Carlson claims that she was discriminated against because of her race and gender.  However,

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   Carlson was completely unable at her deposition to identify *even a single* discriminatory act in

2   response to Defendant's counsel's basic examination questions. Hicks Decl. at ¶3. For example,

3   Carlson was unable to identify the first time she claimed to be discriminated against because of her

4   race or gender. Carlson was also unable to identify "any other incidents or evidence" which

5   supported her discrimination claim. Carlson Depo. at 75:2-76:9 ("Q: Please tell me any other

6   incidents or evidence that you claim to have that you were discriminated against because of your

7   race or gender while you worked at the Monte Carlo? A: I can't remember right now. There was so

8   many things that I can't . . .").

9        After Carlson could not recall a single discriminatory act that she was subjected to, Carlson

10   and her counsel then requested to take a break prior to Carlson completing her response to

11   Defendant's pending question. Hicks Decl. at ¶3. Although Carlson had previously requested

12   multiple breaks during her short deposition, defense counsel agreed to allow her to take a one minute

13   break so that Carlson could take medication, an Advil. Following the short break and recognizing

14   that summary judgment against her client was a certainty given her testimony to that point,

15   Plaintiffs' counsel requested yet another break to consult with Carlson even though a question was

16   pending. These deposition shenanigans resulted in defense counsel being forced to contact

17   Magistrate Judge Leen for a dispute resolution conference. Magistrate Leen was on the bench at the

18   time and her clerk indicated that she would try to get back to us during the deposition. Carlson

19   Depo. at 76:10-79:14, 147:2-4.

20        Following the call with Magistrate Judge Leen's clerk and the break during which Carlson

21   consulted with her attorney, defense counsel repeated the pending question to Carlson who requested

22   that it be rephrased. Defense counsel rephrased the question and Carlson responded as follows:

23        Q.    Please tell me everything you can recall that you claim was
            discrimination on the basis of your race or your sex while you
24            worked at the Monte Carlo.

25        A.    I can't think right now because of my headache so I can't remember.

26   Carlson Depo. at 83:22-84:21, 86:6-11.

27        Magistrate Judge Leen then called the parties back in order to address their discovery

28   dispute. While Plaintiffs' counsel misrepresented to Magistrate Judge Leen that there was no

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

question pending when she privately consulted with Carlson, Magistrate Judge Leen explicitly stated that "[c]ounsel may not coach a witness during a break or while a question is pending, and may not speak to a witness before the witness provides an answer." Carlson Depo. at 96:4-100:18.

Shortly thereafter, defense counsel concluded his examination of Carlson as she was unable to identify *any* alleged racial or sexual harassment, meaning summary judgment was certainly appropriate. Plaintiffs' counsel requested yet another break before she commenced her examination of Carlson. In fact, Carlson and her counsel then took a break for an hour and 15 minutes. Carlson Depo. at 101:1-21; Hicks Decl. at ¶4. During the break, Carlson admittedly discussed the case with her counsel. While defense counsel could not explore in detail what Carlson discussed with her attorney due to the attorney-client privilege, Carlson did testify that they talked about case during their break. Carlson Depo. at 144:3-145:3. Defense counsel inquired as to how Carlson was suddenly able to identify alleged discriminatory incidents in response to her counsel's questions but could not identify such incidents during his examination. Carlson responded, "[t]he way she was asking me the questions wasn't as rude as they were yours." Carlson Depo. at 145:8-146:22.

Following the lengthy break with her counsel, Carlson miraculously recalled a number of alleged discriminatory acts in response to her counsel's prompting and leading questions. Carlson Depo. at 104:10-105:17. As an example, Carlson identified the following alleged incidents which after her caucus with her attorney she was claiming constitute harassment based upon her race and/or gender:

- Jones-Ono said on one occasion that she was going to take Carlson's green card, that "Mexicans take our jobs," she couldn't stand Mexicans, "she hated her daughter-in-law; why didn't she go back to Mexico," she wished "she goes back to Mexico and stop taking our jobs," and "oh no, never mind, I forgot Cubans don't clean, they hire Mexicans to do it for them." Carlson Depo. at 105:13-106:2, 130:9-131:12, 147:13-18.
- Carlson's former co-worker, Giancarlo Gozzi, stated that he would wipe his behind with the Mexican flag, he hated Mexicans because they took his job, he hated his neighbors because they were Mexican and always took his parking spots. Carlson Depo. at 112:8-113:5.
- Richardson stated that she was against interracial marriages and she hated her daughter singing Michael Jackson's song "Black and White." Carlson Depo. at 119:13-120:19.
- Guzman (who is himself Hispanic) would make up an episode of South Park and put Mexicans down, and referenced a photo on his iPhone saying "that's where the dirty and ghetto Mexicans live." Carlson Depo. at 124:15-125:11, 128:20-129:16.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

8.

- Carlson's former co-worker, Don Hansill (now deceased), asked her if she was in some kind of diva squad, told her that he didn't like women with fake implants, said he liked women with a behind and then grabbed his behind. Carlson could not even recall what words Hansill used to describe female body parts or whether she was claiming Hansill sexually harassed her. Carlson Depo at 132:11-133:17, 204:3-206:7; 206:14-17, 209:9-15, 210:6-9.

Conveniently, co-Plaintiff Hall was usually the single witness to nearly each alleged incident or comment. Carlson Depo. at 106:3-8, 113:25-114:6, 120:20-22, 122:9-16, 128:24-129:16, 182:17-183:15. Carlson could not even recall when Jones-Ono allegedly made the green card comment, when Gozzi allegedly made comments about Mexicans, when Richardson allegedly made a comment about interracial marriage, or when Guzman allegedly made the comment regarding dirty and ghetto Mexicans.[4] Even though her attorney had apparently "refreshed" her memory during their hour plus break, she still couldn't identify when any of the alleged comments occurred—not one. Carlson Depo. at 147:19-148:3, 171:14-18, 179:19-181:2, 199:23-200:4.

Not surprisingly, Carlson has history of poor performance. In 2011, Carlson received multiple, progressive disciplinary actions for unsatisfactory job performance related to being physically outside of her assigned work station. Carlson Depo. at 138:19-139:19, 225:18-226:11, 232:5-233:2, 233:12-234:4, 236:14-237:5; Exhibit 14 (Carlson Counseling Notice dated 9/19/11; MC000639-MC000641); Exhibit 15 (Carlson Counseling Notice dated 9/30/11; MC000642-MC000643); Exhibit 16 (Carlson Counseling Notice dated 10/18/11; MC000974-MC000975); Exhibit 17 (Carlson Suspension Pending Investigation Notice; MC000592). Carlson did not deny that she was indeed out of her work station. Carlson Depo. at 226:12-227:17, 233:3-9, 234:5-19. Carlson testified that she believes that other ushers were also disciplined each time they were found to be outside of their work stations. Moreover, Carlson was not aware of a single incident where an usher was found to be outside of his or her work station but was not disciplined. Carlson Depo. at 141:6-14, 141:25-142:9. In other words, Carlson admitted that she was treated just like everyone

---

[4] Carlson did not present any evidence that Gozzi's alleged actions were in any way related to her race or gender. Carlson Depo. at 177:21-178:15. Of importance, it is undisputed that Defendant terminated Gozzi after he struck Carlson and Gozzi never returned to the workplace after the incident. Carlson Depo. at 177:16-20. Likewise, Carlson did not present any evidence that she reported Guzman's alleged sexual comments to Defendant nor could she even recall at her deposition whether she was accusing Guzman of sexual harassment. Carlson Depo. at 194:16-195:11.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

else. Ultimately, the Monte Carlo terminated Carlson for her repeated "misconduct – failure to remain in assigned work station" on November 7, 2011.   Exhibit 18 (Carlson Personnel Action Notice; MC000935-MC000936).

### C.   Hall's Alleged "Evidence" of Harassment and Retaliation

Hall claims that he was discriminated against because of his race while employed by the Monte Carlo.  However and incredibly, when questioned at his deposition if he was claiming that he was also discriminated against based upon his gender, Hall said "no" in response to defense counsel's question.  Hall testified as follows in response to defense counsel's question:

> Q:   Are you contending that anyone at the Monte Carlo discriminated against you or harassed you based on your gender?
> A:   No, sir.

Hall Depo. at 59:18-60:6, 159:17-20.  As will be discussed below, Hall (like Carlson the day before him) took a break with his attorney and after taking that break changed his testimony and stated that he was now complaining about gender discrimination.

As to alleged race harassment, a sampling of Hall's allegations include:

- In response to Hall's comments that his "people are originally from New Orleans," Hansill told Hall that "'[t]he French raped the blacks' and that's why – that's probably – 'you might want to be thankful because otherwise you would be the color of my shoe,'" which was black.  According to Hall, Hansill also said "'[s]o you can tell' or whatever, that yeah, 'yeah, you've got some type of mixture in you.'"  Hansill said, "[o]therwise, you would be that color" referring to a dark-skinned co-worker.  Hall could not recall when the alleged conversation occurred.  Hall did not identify any other alleged comments by Hansill that he claims constitute race discrimination.  Hall Depo. at 84:25-88:8, 90:9-13.
- Perry told Hall that he was good looking for a black man.  Perry also said, referring to the child born from an extramarital affair by her daughter-in-law, "[t]he baby came out really dark" and "I just hope that he lightens up because you know, he came out the color of my table cloth."  Hall could not recall when the alleged conversation took place.  Hall Depo. at 91:18-92:3, 96:16-97:22, 98:17-99:17.
- Hall's former co-worker, Shaldale Diamond, said "brain damage" to him but he did not know what she meant by that term.  Hall did not identify any alleged conduct of a racially discriminatory nature by Diamond.  Hall Depo. at 131:1-18.
- Guzman called Hall, "one of those Wayne Brady's," "well spoken, fair skinned" . . . "[b]ack in the day they used to call them house niggers.  The presentable blacks, hireable blacks."  Hall could not recall when Guzman made the alleged statement.  Hall Depo. at 132:3-133:19.  Hall claimed that "there were so many times" Guzman would make racial comments but he was unable to specifically identify such alleged comments with the exception of a conversation wherein Guzman relayed to Hall that "black dudes used to bully him."  Hall did not recall when the conversation about bullying allegedly occurred.  Hall Depo. at 141:9-142:22, 147:21-148:15.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

- Hall's former supervisor, Carol Wasson, ignored his questions and refused to allow him to work in the mezzanine with Carlson on one occasion.  Hall had no evidence that Wasson's alleged actions were related to his race.  Hall could not recall when the alleged incident occurred.  Hall did not identify any additional conduct by Wasson which he claims constitute race discrimination.  Hall Depo. at 152:22-154:24, 155:14-156:23, 158:2-10.

In a clumsy attempt to manufacture a race claim and perhaps avoid summary judgment, Hall and his counsel have from the commencement of this litigation alleged that he had a recording where co-worker Perry used the "N word."  This allegation which is the linchpin of Hall's race claim has been proven to be *100% fabricated*.  Exhibit 4.  Conveniently and not surprisingly, co-Plaintiff Carlson was usually the only alleged witness to nearly each alleged incident or comment.  Hall Depo. at 69:12-16, 80:6-12, 92:9-12, 102:2-8, 105:23-106:3, 133:20-134:12.

Hall's racial harassment complaint is based upon his alleged offense and objection to Perry's alleged use of the "N word."  Even if such a term had been used and captured on tape as Hall has alleged, Hall's own racial language dooms his case.  Hall initially denied at his deposition that he ever used the word "nigger," but when pressed he admitted using the word "nigga" when he was younger.  Hall initially testified that he stopped using the "N word" but could not recall exactly when he did so.  However, Hall made it clear that he hasn't used such language for many years.  Hall Depo. at 136:17-137:9, 168:12-169:18.  However, Hall's sworn deposition testimony was a blatant lie that he was confronted with at his deposition.

As noted at his deposition, Hall appears in videos posted by Hall on his YouTube Facebook page which include, as an example, the following statements and conduct of a racial and sexual nature:

- "Look at this shit.  Always fucking with the nigga.  What the fuck they do?  And they ain't even in North Town.  North Town your ass would never get out of jail."  Hall Depo. at 173:8-13.
- Hall's video for his song entitled "Sexual Positions" includes photographs of scantily clad women with notations next to their pictures such as, "Sexy as hell" and "Personal favorite."  The end of the video includes the statement by Hall, "Thanks for listening and checking out the ladies I wouldn't mind having in my favorite sexual position."  Hall Depo. at 173:24-174:7, 174:18-176:1.
- Hall wrote the lyrics for the song "Sexual Positions."  Some of the explicit language Hall uses includes: "I'm going to lick on your clit.  I'm licking, I'm trying to make it wet.  Now, get down on your knees, that feeling.  Got me working up a sweat."  Hall Depo. at 176:2-3, 176:12-20.
- Hall used the N word several times in a video.  Hall Depo. at 189:14-16.
- One of the videos, in which Carlson appears, includes a picture of a woman grinding

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

on a dance pole. That video includes the lyrics sung by Hall, "Mind own business. Fuck these bitches. All I care about is riches. And you know I'm going to get it." Hall also sings the lyrics, "I'm a real nigga, gaming on a bitch till I'm a gold digga." Hall Depo. at 192:1-14, 194:7-195:13, 197:3-20.

- Hall tweeted tweets on his Twitter account using variations of the "N word" such as "I see u grindin hard ma nigga much respect." Hall Depo. at 216:1-218:11.

Hall Depo. at 170:10-171:9, 173:14-23, 182:21-183:12, 189:3-190:4.

Rather than taking responsibility for the racially and sexually charged content of his videotaped conversations with his friends, for the videos he prepared, or for the tweets that he created on Twitter, Hall at his deposition testified that *he has an alter ego* (who Hall has named "Dakoven") and racial and sexually inappropriate language that we viewed from You Tube is actually his alter ego. Yes, Hall actually testified that *he* (Josh Hall) didn't say anything inappropriate of a sexual or racial nature, but instead it was his alter ego! Hall Depo. at 181:12-182:20, 187:6-10, 187:22-188:24, 197:24-198:9.

After taking a break and speaking with his counsel, Hall returned to the conference room and directly contradicted his prior testimony regarding any claim based upon his sex. Specifically, after breaking with his counsel, Hall testified in response to her questions as follows:

> Q:    Did Counsel earlier ask you if you feel you were harassed because of your gender?
> A:    Yes.
> Q:    Do you feel that you experienced sexual harassment at work?
> MR HICKS:            Objection. Leading. Asked and answered.
> BY MS. SCHUETZ:
> Q:    You can answer.
> A:    Yes.

Hall Depo. at 233:4-13. In other words, Hall testified he was not claiming sexual harassment when asked by defense counsel and turned around and gave the exact opposite testimony after being coached by his attorney—the equivalent of submitting a contradictory declaration after a deposition in order to fraudulently defeat summary judgment. Hall Depo. at 237:1-238:1.

After being coached by his counsel about his alleged sexual harassment claim, Hall testified that his former supervisor, Quiroga, said or did the following: asked Hall one time if a tube of lipstick he found in the theater was his; invited Hall to join him and some friends on a trip to Long Beach on one occasion because he had an extra seat; told Hall that his friends, who were under 21,

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   could go to a gay club in town because you don't need to be 21 to go there; and used a stanchion on

2   one occasion to do a pole dance in front of Hall.  Hall Depo. at 233:14-234:11, 235:8-236:10,

3   253:24-254:11.

4       Following Carlson's suspension pending investigation, Hall took a leave of absence in large

5   part because Carlson was no longer at work with him.  Following the expiration of his leave of

6   absence, Hall resigned from his employment with the Monte Carlo on March 26, 2012.  Carlson's

7   employment at the Monte Carlo had ended at the time of Hall's resignation.  Hall Depo. at 31:5-7,

8   208:20-209:2, 215:16-23.

9       **D.**   **Plaintiffs' Co-Workers' and Managers Deny Witnessing or Engaging In Alleged Harassment and/or Retaliation**

10

11      Plaintiffs' co-workers uniformly denied witnessing any racial or sexual harassment or

12   discrimination towards Carlson.  Guzman Depo. at 83:15-23; Jones-Ono Depo. at 18:3-5, 18:9-16,

13   Perry Depo. at 19:15-17, 19:21-23, 43:2-11; Basulto Leon Depo. at 31:20-32:1; Richardson Depo. at

14   33:16-21; Exhibit 19 (Deposition of Dawn Marie Spain ("Spain Depo.") at 64:1-6).  Likewise,

15   Plaintiffs' co-workers uniformly denied witnessing any allegedly racial or sexual harassment or

16   discrimination towards Hall.  Guzman Depo. at 83:9-14, 83:24-84:4; Jones-Ono Depo. at 17:25-

17   18:2, 18:6-8, 18:17-19:5; Perry Depo. at 19:12-14, 19:18-20, 43:2-5, 43:12-17; Basulto Leon Depo.

18   at 32:2-8; Richardson Depo. at 33:7-15; Spain Depo. at 63:20-25.  Moreover, Plaintiffs' former

19   supervisors denied witnessing or engaging in any discrimination, harassment or retaliation towards

20   Plaintiffs.  Quiroga Depo. at 104:21-105:22; Exhibit 20 (Telephonic Deposition of Jennifer

21   Klinefelter ("Klinefelter Depo.") at 100:18-101:10, 101:16-103:16); Exhibit 21 (Deposition of Carol

22   Wasson ("Wasson Depo.") at 17:24-18:5, 23:7-10, 47:25-48:3); Exhibit 22 (Deposition of Nivea

23   Santiago ("Santiago Depo.") at 44:16-45:18).

24      **E.**   **Plaintiffs' Charges of Discrimination**

25      On August 12, 2010, Carlson filed a Charge of Discrimination with the EEOC alleging that

26   she was subjected to harassment based upon her national origin and sex in violation of Title VII.

27   Carlson subsequently filed an amended Charge of Discrimination alleging retaliation.  Exhibit 23

28   (Carlson Charge of Discrimination dated 8/21/10; MC001206); Exhibit 24 (Carlson Amended

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

13.

1   Charge of Discrimination dated 8/25/11; MC001210).

2   On August 12, 2010, Hall filed a Charge of Discrimination with the EEOC alleging that he

3   was subjected to a racially hostile work environment in violation of Title VII.  Hall subsequently

4   filed an amended Charge of Discrimination alleging retaliation.  Exhibit 25 (Hall Charge of

5   Discrimination dated 8/21/10; MC000536); Exhibit 26 (Hall Amended Charge of Discrimination

6   dated 9/21/11; MC000540).  Hall never filed a charge claiming sex harassment.  Hicks Decl. at ¶27.

7   **III.   LEGAL ARGUMENT**

8       **A.   Standard for Summary Judgment**

9   Summary judgment is appropriate when the pleadings, discovery, and exhibits show there is

10  no genuine dispute as to any material fact and that the moving party is entitled to judgment as a

11  matter of law.  *See*, Fed. R. Civ. P. 56(c).  The party opposing a dispositive motion cannot simply

12  rest on his pleadings, but must provide sufficient evidence that would allow a reasonable trier of fact

13  to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

14  (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

15  insufficient."  *Id.* at 252.  Moreover, any factual disputes pointed out by the non-moving party must

16  concern *material* issues.  Non-material factual disputes will not defeat a motion for summary

17  judgment.  *Id.* at 248.  Summary judgment is not a disfavored procedural shortcut, but rather is an

18  integral part of the Federal Rules of Civil Procedure which are designed "to secure the just, speedy,

19  and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

20  One of the principal purposes of a dispositive motion is to isolate and dispose of factually

21  unsupported claims.  *Id.* at 323-324.  The moving party is not required to produce evidence showing

22  the absence of a genuine issue of material fact.  *Id.* at 325.  Rather, the moving party's burden is

23  satisfied by showing that there is an absence of evidence to support the non-moving party's case.  *Id.*

24  Once the moving party shows the absence of evidence, the burden shifts to the non-moving party to

25  show specific facts which present a genuine issue for trial.  *California Architectural Bldg. Prods.,*

26  *Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

27  A plaintiff may not defeat summary judgment merely by denying the credibility of the

28  defendant's preferred reason for the challenged employment action.  *Wallis v. J.R. Simplot Co.*, 26

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

14.

1    F.3d 885, 890 (9th Cir. 1994).  Moreover, a plaintiff's speculative testimony about the motive for an

2    employer's employment action is insufficient to create a triable issue of material fact.  *See*, *Lujan v.*

3    *National Wildlife Federation*, 497 U.S. 871, 888 (1990) (conclusory allegations insufficient to defeat

4    summary judgment motion); *Lobster v. Sierra Pacific Power Co.*, 12 F. Supp. 2d 1105, 1109-10 (D.

5    Nev. 2005).  Rather, a plaintiff must come forward with specific admissible evidence demonstrating

6    that an employment decision was made with an improper motive.  As discussed in detail below,

7    Defendant has met its burden regarding Plaintiffs' deficient claims.

8         **B.**     **Plaintiffs Cannot Establish A Prima Face Case of Sexual Harassment**

9         In order to establish an actionable hostile work environment, Plaintiffs must show that their

10   workplace was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently

11   severe or pervasive to alter the conditions of the victim's employment and create an abusive working

12   environment."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  Specifically, Plaintiffs must

13   demonstrate that:  (1) they were subject to unwelcome harassment, (2) the conduct complained of

14   was sufficiently severe or pervasive to alter the conditions of their employment and to create an

15   abusive working environment, (3) the harassment was based on a protected class, and (4) there is a

16   basis for employer liability.  *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).  In

17   addition, the environment must also "both subjectively and objectively be perceived as abusive."

18   *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  In other words, Plaintiffs must show

19   that they perceived the environment to be hostile <u>and</u> that a reasonable person would also find it to

20   be so.  *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991 (9th Cir. 2010).

21        To determine whether conduct was sufficiently severe or pervasive to create a hostile work

22   environment, Courts look at all the circumstances, "including the frequency of the discriminatory

23   conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

24   utterance; and whether it unreasonably interferes with an employee's work performance."  *Faragher*

25   *v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998) (internal quotations omitted).  The required

26   showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness

27   or frequency of the conduct."  *Brooks*, 229 F.3d at 926.

28        The United States Supreme Court has also held that "[a] recurring point in [our] opinions is

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1     that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

2     amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County*

3     *School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher*, 524 U.S. at 788). Further,

4     while conduct may be reprehensible and appropriately described as harassment, it does not

5     necessarily "affect[] a term, condition, or privilege of employment within the meaning of Title VII"

6     so as to create an actionable hostile work environment. *Brooks*, 229 F.3d at 924 (9th Cir. 2000).

7            **1.**     *Carlson's Sexual Harassment Claim Fails*

8                **a.**     *Carlson Failed to Identify Any Evidence of Sexual Harassment*

9        Carlson was unable to identify <u>any</u> alleged incidents of sexual harassment when questioned

10    at her deposition by Defendant's counsel. Carlson Depo. at 75:10-76:9, 86:6-11. In light of

11    Carlson's utter failure to put forth any evidence at her deposition to support her sexual harassment

12    claim, judgment should entered in Defendant's favor.

13        Carlson's subsequent deposition testimony following her off the record discussions with her

14    counsel and in response to her counsel's leading questions should be disregarded as being akin to a

15    "sham affidavit" contradicting her prior sworn testimony. "The Ninth Circuit has found that the

16    contradiction of prior, sworn testimony through subsequent sworn testimony cannot create a genuine

17    issue of fact." *O'Brien v. United States*, 2011 U.S. Dist. LEXIS 24021 at *30 (D. Nev. March 9,

18    2011)(citing *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). "Under our 'sham'

19    affidavit rule, 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition

20    testimony.'" *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir.

21    2005) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). The rationale

22    behind the "sham" affidavit rules lies in that "[i]f a party who has been examined at length on

23    deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior

24    testimony, this would greatly diminish the utility of summary judgment as a procedure for screening

25    out sham issues of fact." *Teller v. Dogge*, 2014 U.S. Dist. LEXIS 36712 at *12 (D. Nev. March 20,

26    2014) (quoting *Kennedy*, 952 F.2 at 262)).

27        Based upon the underlying rationale of the sham affidavit rule, the Ninth Circuit extended the

28    rule to deposition corrections pursuant to Rule 30(e) which are offered solely to create a material

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

factual dispute in a tactical attempt to evade an unfavorable summary judgment. *Hambelton Bros. Lumber*, 397 F.3d at 1225-1226. In *Hambleton Bros. Lumber*, the Court found that the deponent's deposition corrections were "clearly altered" to allege sufficient facts to defeat summary judgment "where none existed before." *Id.* at 1225 n.6. The same circumstances exist in this case where Carlson's subsequent testimony in response to her counsel's leading questions "clearly altered" her prior sworn testimony in response to Defendant's counsel's questions which failed to present sufficient evidence of sexual harassment to survive summary judgment.

Moreover, Carlson's counsel's line of questioning clearly constitutes coaching of the witness as the questions essentially told Carlson how to respond. *In re Stratosphere Corp. Securities Litigation*, 182 F.R.D. 614, 621 (D. Nev. 1998) (stating that "[w]hat this Court, and the Federal Rules of Procedure seek to prevent is coaching the witness by telling the witness what to say or how to answer a specific question"). Carlson's only explanation for her sudden recollection of alleged events in response to her counsel's questions was "[t]he way she was asking me the questions wasn't as rude as they were yours." Carlson Depo. at 145:8-146:22. "Self-serving testimony, made when an individual is faced with summary judgment, that contradicts clear evidence on the record need not be given credence by the court." *Teller*, 2014 U.S. Dist. LEXIS 36712 at *12; *Aldabe*, 81 Nev. 280 (holding that conflicting allegations under oath does not preclude entry of summary judgment). Plainly, summary judgment should be entered in Defendant's favor based upon Carlson's failure to assert any evidence of sexual harassment in response to Defendant's counsel's examination questions. Carlson's contradictory and self-serving testimony in response to her counsel's coaching and leading examination fails to raise a genuine issue of material fact and such conduct should not be permitted to defeat summary judgment.

        **b.**    ***Carlson Failed to Identify Severe and Pervasive Conduct of a Sexual Nature***

Carlson's sexual harassment claim also fails because the conduct which she alleges – including Carlson's testimony that her counsel elicited after speaking with her at the break and through clearly leading questions - is not sufficiently severe or pervasive to constitute a viable claim for sexual harassment. Here, Carlson's only evidence of alleged sexual harassment is a single

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

17.

1   incident involving Hansill, who passed away before the Monte Carlo could interview him regarding
2   Carlson's complaint. However, Carlson could not recall when Hansill made the alleged comments
3   and gesture regarding female body parts nor could she recall the specific words he used to describe
4   the body parts. Carlson also could not recall whether she was claiming Hansill sexually harassed or
5   her specific problem with the Monte Carlo's investigation into the matter. Carlson Depo. at 204:3-
6   206:7, 206:14-17, 209:9-15, 210:6-9.

7       Notably, Carlson did not present any evidence that Gozzi's alleged conduct was related to
8   her gender. Nor did Carlson present any evidence that she reported Guzman's alleged sexual
9   comments to Defendant or that she was even accusing Guzman of sexual harassment in this case.
10   Carlson Depo. at 177:21-178:15, 194:16-195:11. Carlson did not identify any additional conduct of
11   a sexual nature that allegedly affected her working conditions.

12       Hansill's single incident of alleged conduct, even if true, is not sufficiently severe or
13   pervasive to rise to the level of actionable sexual harassment. *See*, *Westendorf v. West Coast*
14   *Contractors of Nevada, Inc.*, 712 F.3d 417, 421-422 (9th Cir. 2013) (holding that supervisor's
15   comments regarding "girly work," "Double D," tampons, orgasms, and French maid costumes was
16   not sufficiently severe or pervasive to alter the plaintiff's working conditions); *Brooks*, 229 F.3d at
17   926 (single incident of co-worker touching victim's stomach and breast under her sweater did not
18   rise to the level of actionable harassment); *Jordan v. Clark*, 847 F.2d 1368, 1375 (9th Cir. 1988)
19   (plaintiff's supervisor making sexist comments and co-workers telling off color jokes was
20   insufficient to create a hostile work environment); *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1047-
21   1048 (D. Nev. 2012) (summary judgment granted in defendant's favor based upon plaintiff's failure
22   to show that working environment was both subjectively and objectively abusive). Because Carlson
23   has not presented a *prima facie* claim for sexual harassment, summary judgment should be entered in
24   Defendant's favor.

25       Furthermore, Carlson's Title VII hostile work environment claim should be dismissed
26   because she cannot place any of the allegedly offensive conduct within the 300 day statutory
27   limitations period. A charging party must file an EEOC charge within 300 days of the alleged
28   unlawful employment practice. 42 U.S.C. §2000e-5(e)(1). In *McDonnell Douglas v. Green*, 411

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   U.S. 792, 798 (1973), the United States Supreme Court noted one of the two "jurisdictional

2   prerequisites" to an action is "filing timely charges of employment discrimination with the [EEOC]."

3   Here, Carlson filed a Charge of Discrimination on August 12, 2010, and an amended Charge on

4   August 25, 2011.  Exhibits 23-24.  Therefore, any alleged act of sexual harassment that occurred

5   prior to October 16, 2009, is time-barred.  However, Carlson cannot recall when Hansill purportedly

6   engaged in the alleged conduct.  Carlson Depo. at 209:9-15.  Therefore, Carlson's claim should be

7   dismissed based upon her failure to demonstrate that her sexual harassment claim is timely.

8          **2.**    *Hall's Sexual Harassment Claim Fails*

9               **a.**    *Hall Failed to Exhaust Administrative Remedies*

10        Federal laws require that "plaintiffs must… exhaust their administrative remedies before

11   seeking judicial relief from discriminatory action." *Brown v. Puget Sound Elec. Apprenticeship &*

12   *Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984); 42 U.S.C. § 2000e-5(e).  "[I]ncidents of

13   discrimination not included in an EEOC charge may not be considered by a federal court unless the

14   new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Sosa*

15   *v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (quoting *Green v. Los Angeles County*

16   *Superintendent of Schools*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)).  "The jurisdictional scope of a

17   Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC

18   investigation." *Id.* (citing *Green*, 883 F.2d at 1476).  Specifically, the inquiry focuses on "'whether

19   the original EEOC investigation would have encompassed the additional charges' made in the court

20   complaint but not included in the EEOC charge itself." *Id.*

21        Here, Hall's Charge and amended Charge assert claims for racial harassment and retaliation

22   only.  Exhibits 25-26.  There isn't a word about alleged sexual harassment in his Charge, which Hall

23   is now trying to throw into this litigation.  Hall never exhausted his administrative remedies by filing

24   a Charge alleging sexual harassment.  Hicks Decl. at ¶27.  Therefore, because Hall failed to exhaust

25   his administrative remedies, he is precluded from pursuing such a claim in federal court.  *Vinieratos*

26   *v. United States*, 939 F.2d 762, 769 (9th Cir. 1991) (exhaustion of administrative remedies is a

27   statutory condition to suit under Title VII); *Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d

28   1295 (9th Cir. 1981).  Accordingly, summary judgment should be entered in Defendant's favor on

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   Hall's Title VII hostile work environment claim.

2             **b.**   ***Hall Failed to State a Prima Facie Claim for Sexual Harassment***

3         Like Carlson, Hall initially denied that he was asserting any claim for sexual harassment.

4   Only after a lengthy forty-five minute break wherein he consulted with his counsel did Hall

5   contradict his prior testimony and assert that he felt sexually harassed at work.  Hall Depo. at 233:4-

6   13.  Hall's only explanation for contradictory testimony was his alleged failure to understand the

7   difference between "sexual harassment" and "harassment on the basis of gender."  Hall Depo. at

8   59:22-60:6, 159:17-20, 237:1-238:1.  However, Hall's subsequent contradictory and self-serving

9   testimony in response to his counsel's coaching fails to raise a genuine issue of material fact and

10  should also be viewed as akin to a sham affidavit.  *O'Brien*, 2011 U.S. Dist. LEXIS 24021 at *30

11  (stating that the contradiction of prior, sworn testimony through subsequent sworn testimony cannot

12  create a genuine issue of fact).  Therefore, summary judgment should be entered in Defendant's

13  favor on Hall's sexual harassment claim.

14        Moreover, Hall's sexual harassment claim fails because his allegations are not sufficiently

15  severe or pervasive <u>or</u> offensive to him to state a *prima facie* claim.  Specifically, Hall testified in

16  response to his counsel's questions that Quiroga engaged in merely four (4) innocuous alleged

17  incidents of sexual harassment: 1) jokingly asking if lipstick that Hall found was his; 2) inviting Hall

18  to Long Beach with a group of friends; 3) suggesting that Hall take his out of town guests to an

19  under 21 gay club; and 4) pole dancing on one occasion in front of Hall.  Hall Depo. at 233:14-

20  234:11, 235:8-236:10, 253:24-254:11.  These four alleged incidents certainly do not rise to the level

21  of severe or pervasive conduct in order to state a cognizable claim for sexual harassment.

22        Furthermore, the undisputed evidence demonstrates that Hall was not offended by such

23  conduct even if Quiroga made such comments and gestures.  *Prospect Airport Servs., Inc.*, 621 F.3d

24  991 (a plaintiff must show that he perceived the environment to be hostile <u>and</u> that a reasonable

25  person would also find it to be so).  Here, the record is replete with Hall's own admissions that he

26  regularly and publicly used *highly* sexually charged language and images.  Hall Depo. at 173:24-

27  174:7, 174:18-176:1, 176:12-20.  Given Hall's repeated admissions that he personally engaged in

28  such unashamed sexual conduct, he cannot demonstrate that he was offended by Quiroga's harmless

LITTLER MENDELSON, P.C
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    remarks.  Therefore, summary judgment should be entered in Defendant's favor for these additional

2    reasons.

3        **C.    Plaintiffs Cannot Establish a Claim for Racially Hostile Work Environment in**
        **Violation of 42 USC §1981**

4

5        A plaintiff must meet the same standards in proving a §1981 claim that he must meet in

6    establishing claim under Title VII.  *El-Hakem v. BJY, Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005);

7    *EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n.7 (9th Cir. 1984).  To establish a *prima facie*

8    hostile work environment claim under §1981, Plaintiffs must raise a triable issue of fact as to

9    whether: 1) they were subjected to verbal or physical conduct because of their race; 2) the conduct

10   was unwelcome; and 3) the conduct was sufficiently severe or pervasive to alter the conditions of

11   their environment and create an abusive work environment.  *Mannatt v. Bank of America, N.A.*, 339

12   F.3d 792, 798 (9th Cir. 2003).  "Section 1981, like Title VII, is not a 'general civility code.'"  *Id.*

13   (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)).

14       **1.    *Plaintiffs Have Not Identified Any Alleged Conduct within the Statute of***
            ***Limitations***

15

16       Plaintiffs' hostile work environment claims based upon their race should be dismissed

17   because they cannot place any of the allegedly offensive conduct within the statute of limitations.  A

18   claim pursuant to 42 USC §1981 has a four year statute of limitations.  *Jones v. R.R. Donneley &*

19   *Sons*, 541 U.S. 369 (2004); *Johnson v. Lucent Technologies, Inc.*, 653 F.3d 1000 (9th Cir. 2011).

20   Plaintiffs filed their Complaint on March 7, 2013.  Neither Carlson nor Hall can identify when any

21   of the alleged racially offensive conduct occurred.  Carlson Depo. at 147:19-148:3, 171:14-18,

22   179:19-181:2, 199:23-200:4; Hall Depo. 87:12-88:8, 98:17-99:17, 133:7-19, 147:21-148:15, 158:2-

23   3.  Therefore, they have not demonstrated that any of the alleged incidents of racial harassment are

24   timely.  Plaintiffs should not be permitted to cavalierly accuse their co-workers of harassment, admit

25   under oath that they have no idea when the alleged harassment occurred and then ask this Court to

26   conclude their claim should proceed to trial.  Clearly, summary judgment should be entered in

27   Defendant's favor on Plaintiffs' §1981 hostile work environment claims.

28   ///

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

2.   *Carlson's Allegations of Racial Harassment Are Not Sufficiently Severe or Pervasive*

As an initial matter, Defendant moves for summary judgment in its favor on Carlson's racial harassment claim based upon her failure to unable to identify <u>any</u> alleged incidents of racial harassment when questioned at her deposition by Defendant's counsel. Carlson Depo. at 75:10-76:9, 86:6-11. In light of Carlson's utter failure to put forth any evidence at her deposition to support her racial harassment claim, judgment should entered in Defendant's favor for the same reasons judgment should be entered in Defendant's favor on Carlson's sexual harassment claim.

Additionally, Carlson has not demonstrated that the alleged conduct is sufficiently severe or pervasive to avoid summary judgment. Carlson alleges a handful of alleged statements by co-workers Jones-Ono, Gozzi, Richardson, and Guzman. However, the alleged statements made over the course of an unspecific number of years are not sufficiently severe or pervasive to constitute an abusive work environment. *See, Manatt*, 339 F.3d 792 (holding that co-workers' racially insensitive humor and offhand remarks occurring over a period of more than two years that was not directed at the plaintiff was not sufficiently severe or pervasive); *see also Stallop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050-51 (9th Cir. 1987) (stating that derogatory ethnic statements, unless excessive and opprobrious, are insufficient to establish a case of harassment). The conduct must be extreme in order to amount to a change in the terms and conditions of employment. *Nagar v. Foundation Health Systems, Inc.*, 57 Fed.Appx. 304, 306 (9th Cir. 2003). The undisputed facts do not demonstrate extreme racial harassment that could have possibly altered the terms and conditions of Carlson's employment. Notably, Plaintiffs' co-workers and supervisors uniformly denied witnessing any alleged harassment directed towards Plaintiffs. Therefore, judgment should be entered in Defendant's favor regarding Carlson's §1981 hostile work environment claim.

3.   *Hall Cannot Demonstrate that He Was Offended by the Alleged Conduct*

As noted above, Hall alleges a handful of isolated comments by his co-workers related to his race. While Hall initially denied that he used the "N word," the undisputed evidence proves that Hall and his associates use that and other racially charged language on a regular basis. Hall Depo. at 136:17-137:9, 168:12-169:18, 173:8-13, 189:14-16, 197:3-20, 216:1-218:11. Thus, Hall cannot

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1  show that he was offended by the alleged comments in the workplace.  As a result, Hall's racial

2  harassment claim fails as a matter of law for this additional reason.

3  **D.  Plaintiffs Cannot Establish a Claim for Retaliation Under Either Title VII or 42 USC §1981**

5  To make out a *prima facie* case of retaliation under Title VII, Plaintiffs must establish that: 1)

6  they engaged in a protected activity; 2) Defendant subjected them to an adverse employment action;

7  and 3) a causal link exists between the protected activity and the adverse action.  *Mannatt*, 339 F.3d

8  at 800 (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).  If Plaintiffs are able to assert

9  a *prima facie* retaliation claim, the burden shifts to Defendant to articulate a legitimate, non-

10  discriminatory reason for the adverse employment action.  *Id.*  "To show the requisite causal link,

11  the plaintiff must present evidence sufficient to raise the inference that her protected activity was the

12  likely reason for the adverse action."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

13  An employee's subjective personal judgments of her competence alone do not raise a genuine issue

14  of material fact. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

15  If Defendant articulates such a reason, Plaintiffs bear the ultimate burden of demonstrating

16  that the reason was merely a pretext for a discriminatory motive.  *Manatt*, 339 F.3d at 800.  The Title

17  VII framework is used to analyze a retaliation claim asserted under 42 USC §1981.  *Id.* at 800-801.

18  **1.  *Carlson's Retaliation Claims Fail as a Matter of Law***

19  Carlson alleges that she was retaliated against by being subjected to bogus write ups and

20  subsequently terminated.  Complaint at ¶83.  However, Carlson cannot establish that her protected

21  activity was the likely reason for the adverse employment actions.  As noted above, Carlson received

22  progressive disciplinary warnings which ultimately resulted in her termination due to her being

23  outside of her assigned work station.  Exhibits 14-18.  The undisputed evidence demonstrates that

24  Carlson was repeatedly warned of her unsatisfactory conduct yet continued to engage in a pattern of

25  disregard for her employer's instructions.  Importantly, Carlson did not deny that she was indeed out

26  of her work station.  Carlson Depo. at 226:12-227:17, 233:3-9, 234:5-19.  Moreover, Carlson

27  testified that other ushers were likewise disciplined for being outside of their work stations.  In fact,

28  Carlson did not identify a single example of an usher who was not disciplined for being outside of

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1   his or her work station.  Carlson Depo. at 141:6-14, 141:25-142:9.

2          Based upon the undisputed material facts, Carlson has not demonstrated a causal connection

3   in order to establish a *prima facie* case of retaliation.  Nevertheless, Defendant has clearly articulated

4   a legitimate and non-discriminatory reason for Carlson's discipline – namely, Carlson's repeated

5   failure to remain in her work station even after being placed on notice of her unsatisfactory

6   performance.  Carlson has absolutely no evidence of pretext.  As a result, this Court should enter

7   judgment in Defendant's favor on Carlson's Title VII and §1981 retaliation claims.

8                  **2.      *Hall's Retaliation Claims Fail as a Matter of Law***

9          Hall cannot establish a claim for retaliation because he took a leave of absence and

10  subsequently resigned from his employment because Carlson—his good friend and co-Plaintiff--

11  was no longer employed by Defendant.  Hall Depo. at 31:5-7, 208:20-209:2, 215:16-23.  Therefore,

12  Hall did not demonstrate that he experienced an adverse employment action that was causally related

13  to his protected activity.  Accordingly, Hall cannot establish a retaliation claim under either Title VII

14  or §1981 as a matter of law.

15          **E.      <u>Hall Was Not Constructively Discharged from his Employment</u>**

16          In order to establish a hostile-environment constructive discharge claim, Hall must prove a

17  lot more than that he was subjected to offending behavior that was so severe and pervasive so as to

18  alter the conditions of his employment and create an abusive working environment.  *Pennsylvania*

19  *State Police v. Suders*, 542 U.S. 129, 146-47 (2004).  Rather, Hall must prove that his working

20  conditions were so intolerable that a reasonable person would have felt compelled to resign.  *Id.* at

21  147.

22          Hall has not identified sufficiently severe or pervasive conduct and the critical time nexus as

23  a matter of law to constitute an actionable claim for harassment.  Instead, he simply spews

24  allegations of isolated incidents with no idea as to when they even occurred.  Importantly, the

25  linchpin of Hall's entire race claim (the bathroom recording) has now been proven to be a complete

26  fabrication and he cannot rely on a blatant lie to avoid summary judgment.  The undisputed facts

27  establish that Hall took a leave of absence and resigned only because Carlson was no longer

28  employed – not because of the alleged work conditions at the Monte Carlo.  Therefore, Hall cannot

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

1 | establish a claim for constructive discharge and judgment should be entered in Defendant's favor

2 | accordingly.

3 | **IV.    CONCLUSION**

4 |      Based upon the foregoing, Defendant respectfully requests that this Court enter judgment in

5 | its favor on Plaintiffs' claims.

6 | Dated: June 26, 2014

PATRICK H. HICKS, ESQ.
SANDRA KETNER, ESQ.
LITTLER MENDELSON, P.C.

Attorneys for Defendant
VICTORIA PARTNERS dba
MONTE CARLO RESORT AND CASINO

LITTLER MENDELSON, P.C.
Attorneys At Law
3560 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702 862 8800

25.

## PROOF OF SERVICE

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169.  On June *26*, 2014, I served the within document(s):

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION**

☒      by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Reno, Nevada addressed as set forth below.

☒      via **E-Mail** - by e-mailing a copy of the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Law Offices of Robert Spretnak | Law Offices of Joshua Friedman |
| Robert Spretnak, Esq. | Joshua Friedman, Esq. |
| 8275 S. Eastern Avenue | Giselle Schuetz, Esq. |
| Suite 200 | 1050 Seven Oaks Lane |
| Las Vegas, NV 89123 | Mamaroneck, NY 10543 |
| | josh@joshuafriedmanesq.com |
| | giselle@joshuafriedmanesq.com |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service.  Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.  I declare under penalty of perjury that the foregoing is true and correct. Executed on June *26*, 2014, Las Vegas, Nevada.

Ann Koorndyk

Firmwide:127293958.1 060736.1054

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800