# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\* \* \*

CLAUDIA CARLSON,

  Plaintiff(s),

v.

VICTORIA PARTNERS,

  Defendant(s).

Case No. 2:13-CV-378 JCM (PAL)

ORDER

Presently before the court is defendant Victoria Partners d/b/a Monte Carlo Resort and Casino's (hereinafter "defendant") motion for summary judgment. (Doc. # 70). Plaintiffs Claudia Carlson and Joshua Hall (hereinafter "plaintiffs") filed a response, (doc. # 80), to which defendant replied, (doc. # 88).

**I.  Background**

Plaintiffs were previously employed as ushers in the Monte Carlo showroom. (Doc. # 70). Plaintiff Claudia Carlson ("Carlson") is a Hispanic female who began working at the Monte Carlo in 2003. (Doc. # 80). Plaintiff Joshua Hall ("Hall") is an African-American male who began working at the Monte Carlo in 2005. (Doc. # 80).

Plaintiffs allege that, beginning in 2008, they were subjected to and witnessed coworkers' racist conduct and remarks. (Doc. # 6). Plaintiffs also allege that beginning around 2010 or 2011, coworkers made sexually offensive statements in plaintiffs' presence and directed such statements towards plaintiffs. (Doc. # 6).

Plaintiffs filed a number of written complaints with defendant concerning this purported discriminatory conduct. (Doc. # 6). Beginning in 2011, Carlson received a number of disciplinary write-ups for allegedly failing to follow appropriate procedures and stay within her workstation. (Doc. # 6).

**James C. Mahan**
**U.S. District Judge**

As a result of the disciplinary write-ups, Carlson was suspended pending investigation. On or about November 7, 2011, she was permanently fired. (Doc. # 6). On or about October 31, 2011, Hall went on medical leave for severe emotional distress supposedly caused by defendant's alleged discrimination. (Doc. # 6). Hall never returned to work at the Monte Carlo and eventually resigned. (Doc. # 6).

Plaintiffs both filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Doc. # 6). On February 1, 2013, plaintiffs received notice of their rights to sue under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. # 27-1, 27-2).

On March 7, 2013, plaintiffs filed a complaint asserting the following causes of action: 1) hostile work environment for race in violation of 42 U.S.C. § 1981; 2) hostile work environment for gender in violation of Title VII, on behalf of Carlson; 3) sexual harassment in violation of Title VII, on behalf of Hall; 4) retaliation in violation of § 1981; 5) retaliation in violation of Title VII; and 6) constructive discharge in violation of § 1981, on behalf of Hall.[1] (Doc. # 6).

On August 25, 2014, plaintiffs filed a motion for leave to file a declaration in further support of their response to defendant's motion for summary judgment. (Doc. # 90). Plaintiffs sought to authenticate deposition transcripts and other documents included as exhibits to their opposition to defendant's motion for summary judgment. (Doc. # 80).

On September 16, 2014, Magistrate Judge Peggy Leen granted in part and denied in part the motion for leave. (Doc. # 93). Judge Leen granted leave to include court reporter certifications to authenticate deposition excerpts. (Doc. # 93). However, Judge Leen denied

---

[1] The parties conflate and confuse plaintiffs' claims, particularly by referring interchangeably to plaintiffs' sex and gender claims as claims of sexual harassment and § 1981 hostile work environment. Plaintiffs' complaint also repeats plaintiff Carlson's hostile work environment claim under § 1981 in both count I and count IV. The court understands plaintiffs' claims to include: (1) hostile work environment claims based on sex and sexual harassment under Title VII; (2) hostile work environment claims based on race under Title VII and § 1981; (3) claims for retaliation under Title VII and § 1981; and (4) plaintiff Hall's claim for constructive discharge under § 1981. For purposes of clarity, the court has arranged its discussion of the claims into these four categories and will resolve the summary judgment motion accordingly.

**James C. Mahan**
**U.S. District Judge**

plaintiffs' request to authenticate their remaining exhibits with a blanket declaration of authenticity by plaintiffs' counsel. (Doc. # 93).

Defendant denies all of plaintiffs' allegations and asserts that plaintiffs have fabricated the instant claims for monetary gain. Accordingly, defendants now move for summary judgment. (Doc. # 70).

## II.   Legal Standards

### A.   Summary judgment

The federal rules of civil procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at

323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "Authentication is a condition precedent to admissibility." *Id.* (internal quotation marks omitted). Authentication requires that the proponent produce evidence that is sufficient to support a finding that the document is what the proponent claims it is. Fed. R. Evid. 901(a). "[U]nauthenticated documents cannot be considered in a motion for summary judgment." *Orr*, 285 F. 3d at 773.

B. Title VII hostile work environment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

"To make a prima facie case of a hostile work environment based on sex or race under Title VII, a person must show that: (1) she was subjected to verbal or physical conduct of a sexual nature or because of race, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007); *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (internal quotation marks omitted).

"Additionally, the working environment must both subjectively and objectively be perceived as abusive." *Id.* "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Id.* Finally, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.*

To establish a claim based on hostile work environment, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and quotations omitted).

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Id*. The "mere utterance of an . . . epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Id*. (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

C. *Section 1981 hostile work environment*

42 U.S.C. § 1981 guarantees "all persons" the same right as white citizens to make and enforce contracts. 42 U.S.C. § 1981(a). "A hostile work environment interferes with the 'enjoyment of all benefits . . . and conditions of the contractual relationship' of employment and is therefore actionable under § 1981." *Manatt*, 339 F.3d at 797 (quoting 42 U.S.C. § 1981(b)).

"A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a . . . claim under Title VII . . . ." *EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n. 7 (9th Cir. 1984). Namely, the plaintiff "must raise a triable issue of fact as to whether (1) she was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive work environment." *Manatt*, 339 F.3d at 798 (internal quotation marks omitted).

*D. Retaliation*

Under Title VII, "it is unlawful to retaliate against an employee because she has taken action to enforce rights protected under Title VII." *Miller v. Fairchild*, 797 F.2d 727, 730 (9th Cir. 1986). To establish a prima facie case for retaliation, a plaintiff must demonstrate: (1) protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). Section 1981 also applies to retaliation claims based on race. *Manatt*, 339 F.3d at 800-01.

"Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003). Further, "where . . . the person who exhibited discriminatory animus influenced or participated in the decision-making process, a reasonable factfinder could conclude that the animus affected the employment decision." *Dominguez-Curry v. Nev. Trans. Dep't*, 424 F.3d 1027, 1038-39 (9th Cir. 2005).

"Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action." *Miller*, 797 F.2d at 731. "If the employer successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination." *Id.*

The Supreme Court has recently clarified the standard of proof with respect to causation, holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

In introducing this heightened causation standard, the court recognized that "claims of retaliation are being made with ever-increasing frequency." *Id.* at 2531. It noted that "lessening the causation standard could also contribute to the filing of frivolous claims, which would siphon

**James C. Mahan**
**U.S. District Judge**

resources from efforts by employer, administrative agencies, and courts to combat workplace harassment." *Id.*

### E. Constructive discharge

In order to establish a claim for constructive discharge, a plaintiff must prove that his working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004). "[W]hether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989) (citing *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987)).

Evidence of a single isolated discriminatory instance will not preclude summary judgment on the issue of constructive discharge. *Watson*, 823 F.2d at 361. A plaintiff must show aggravating factors such as a continuous pattern of discriminatory treatment over a period of months or years. *Id.*

## III. Discussion

### A. Hostile work environment based on sex and sexual harassment

Hall claims that his supervisor, Quiroga, sexually harassed him and that this created a hostile work environment. (Doc. # 6). In particular, Hall claims that Quiroga asked Hall if a tube of lipstick was his, invited Hall to join Quiroga and his friends on a trip, mentioned a gay club, and performed a pole dance in front of Hall. (Doc. # 6).

Hall alleges that Quiroga made sexually offensive remarks in his presence "three or four" times per week. (Doc. # 80). He also claims that Quiroga "frequently stood excessively physically close to Hall" and "cast amorous looks and facial expressions" towards him. (Doc. # 6).

However, Hall provides evidence, through his deposition testimony, of only four particular instances of alleged harassment. Such limited instances, even offensive in nature, do not rise to the level of "severe or pervasive" conduct. *See, e.g.*, *Westendorf v. West Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (granting summary judgment on a sexual harassment claim where supervisors made multiple comments related to "girly work,"

1  tampons, "Double Ds," orgasms, and french maid costumes). As a result, the evidence is
2  insufficient to preclude summary judgment on Hall's sexual harassment claims.

3  Carlson alleges that she was sexually harassed and discriminated against on the basis of
4  her sex. (Doc. # 6). In particular, Carlson claims that her coworker, Hansill, made comments
5  about women's bodies, including references to breasts and implants, in her presence. (Doc. #
6  80).

7  Carlson also asserts that her coworkers Don and Guzman made comments regarding
8  prostitutes in front of her. (Doc. # 6). She further alleges that Don asked Carlson if she was
9  trying to join the "diva squad," called her fake, and referenced his preferences with regard to
10  women's bodies. (Doc. # 6).

11  Carlson's evidence and allegations of sexual harassment are similarly insufficient to
12  show severe and pervasive conduct. The conduct that Carlson references does not rise to the
13  level of seriousness required to alter the conditions of employment. Mere offensive comments
14  are insufficient; defendant is entitled to summary judgment on this claim. *See Westendorf*, 712
15  F.3d at 422.

16  Notably, defendant also argues that Carlson's claims are time-barred. (Doc. # 70). The
17  300-day statutory limitations period for filing an EEOC claim would bar Carlson's claims for
18  any alleged sexual harassment occurring before October 16, 2009. (Doc. # 70). While Carlson
19  could not recall specific dates of the purported offenses at her deposition, plaintiffs contend that
20  the conduct at issue occurred in 2010 and 2011. (Doc. # 6).

21  The court finds some dispute of material fact over the timing of the conduct which, when
22  viewed in the light most favorable to plaintiffs, would allow their claims to go forward. *See*
23  *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005) (reversing
24  summary judgment despite plaintiff's failure to identify specific dates of alleged pervasive
25  discriminatory conduct). However, because plaintiffs have failed to provide sufficient evidence
26  to show severe and pervasive conduct, the court will grant summary judgment on the merits.
27  . . .
28  . . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    Defendant also argues that Hall failed to exhaust his administrative remedies. (Doc. # 70). Defendant contends that Hall's amended EEOC charge never contained any allegation of sexual harassment, therefore he cannot bring such a claim in this suit. (Doc. # 70).

Exhibit DDD to plaintiffs' response to defendant's motion for summary judgment is a letter detailing the purported sexual harassment. (Doc. # 80-56). Hall contends that he sent this letter to the EEOC when he filed his amended charge.

First, this document has not been authenticated and thus cannot be considered by the court in ruling on a motion for summary judgment. *See Orr*, 285 F. 3d at 773. However, even if Hall could provide admissible evidence that he sent the letter to the EEOC, this would be insufficient to exhaust Hall's administrative remedies on this claim.

A plaintiff may litigate a claim for which administrative remedies are available only if that claim was included in an EEOC charge or related to allegations in the charge. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). While Hall's sexual harassment and race claims both allege discrimination, they do so on wholly different bases and by evidence of separate alleged instances of conduct.

As a result, the court cannot say that "the original EEOC investigation would have encompassed the additional charges made in the court complaint but not included in the EEOC charge itself." *Id.* (internal quotation marks omitted). Therefore, even if the court did not resolve the instant motion on the merits, Hall's claim of sexual harassment would be barred at this time for failure to exhaust his administrative remedies.

Overall, among other issues, plaintiffs have failed to make a showing sufficient to establish severe or pervasive conduct for their hostile work environment claims based on sex and sexual harassment. As such, defendant has proven that there is insufficient evidence of a genuine, material factual dispute on these claims. Accordingly, the court will grant defendant's summary judgment motion with respect to plaintiffs' Title VII hostile work environment and sexual harassment claims.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 9 -

   B. *Hostile work environment based on race*

Plaintiffs allege that defendant created a hostile work environment by discriminating against them on the basis of their race. (Doc. # 6). Plaintiffs claim that they "experienced frequent offensive racial remarks and conduct, at times almost daily." (Doc. # 80).

Alleged comments made to Carlson include a Caucasian usher's statements that she was "going to take [Carlson's] green card," that "Mexicans take our jobs," that she "couldn't stand Mexicans," that she "wishes [Carlson] was back in Mexico," and that "the blacks and the Mexicans were taking the white people's jobs." (Doc. # 80).

Carlson also claims that another Caucasian coworker, Richardson, made offensive comments regarding interracial marriage and stated that Carlson "needs to go back to Mexico." (Doc. # 80). Carlson's coworker Gozzi allegedly stated that he would "wipe his behind with the Mexican flag." (Doc. # 80). Carlson also claims that another coworker, Guzman, called her a dirty Mexican. (Doc. # 80).

Hall claims that Guzman frequently made racially derogatory remarks to Hall. Specifically, he alleges that Guzman brought up race daily, calling Hall a "Wayne Brady" and an "Obama black" and using the term "house n*gger." (Doc. # 80). Hall contends that Guzman used "n*gger" at work about 25 to 30 times per month, "all the time." (Doc. # 80).

Hall further alleges that his coworker Hansill stated that Hall's ancestors were "raped by French persons" and compared Hall's skin color to that of Hansill's black shoes. (Doc. # 80). Hall also claims that a coworker, Perry, used the word "colored" and told Hall that "for a black man you are good looking." (Doc. # 80). Perry also supposedly asked Hall if an African-American baby would "lighten up," comparing the color of the baby's skin to a tablecloth. (Doc. # 80). Finally, Perry allegedly used the term "Swartzin-n*gger." (Doc. # 80). Plaintiffs' deposition testimony supports these claims. (Docs. # 80-1, 80-2).

At this stage of the proceedings, defendant has the burden to either present evidence negating plaintiffs' claims or to demonstrate that plaintiffs have failed to show an essential element of their claims. *See Celotex Corp.*, 477 U.S. at 323-24. Defendant has not met this

burden. While defendant alleges that plaintiffs' claims are untruthful, this is a factual dispute that cannot be resolved as a matter of law at this time.

Viewing the evidence in the light most favorable to the non-moving party, plaintiffs have produced enough examples of alleged racial conduct to support a claim of hostile work environment under section 1981. Because the purported discriminatory conduct could have been sufficiently severe or pervasive to create a hostile work environment, defendant is not entitled to summary judgment on plaintiffs' race claims.

Further, plaintiffs' claims are not barred by the four-year statute of limitations in section 1981. "As noted, a plaintiff need not recite precise dates of an employer's discriminatory conduct, especially where she alleges that the conduct was pervasive." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005).

Plaintiffs do not allege that they are entitled to recover for conduct occurring outside the statute of limitations. Further, they claim that they were discriminated against until the end of their employment with defendant in 2011. Because the evidence does not indisputably foreclose plaintiffs' claims on statute of limitations grounds, summary judgment is also inappropriate on this basis.

Finally, defendant argues that Hall cannot establish that he was subjectively offended by any racist comments based on his own use of racial epithets outside of the workplace. (Doc. # 70). Hall's own use of certain terminology outside of work is irrelevant to whether he or a reasonable person in his position would be offended by coworkers' targeted insults. Accordingly, summary judgment will be denied on plaintiffs' race discrimination claims.

*C. Retaliation*

Carlson alleges that she engaged in protected activity by complaining of discrimination and filing EEOC charges. (Doc. # 6). She claims that defendant retaliated against her by issuing negative reviews and firing her. (Doc. # 6).

The parties acknowledge that in 2011, Carlson received multiple disciplinary citations for unsatisfactory job performance related to leaving her assigned work station. The parties do not dispute the sharp increase in Carlson's workplace citations leading up to her termination. As

James C. Mahan
U.S. District Judge

- 11 -

1 noted, temporal proximity can serve as circumstantial evidence of retaliation. *See Bell v.
2 Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003). Whether Carlson's alleged misconduct was
3 used as pretext to retaliate against her cannot be resolved as a matter of law at this time.

4 With regard to Hall, plaintiffs do not allege particular instances of retaliation. Plaintiffs
5 included exhibits purporting to provide evidence of retaliation with their response to defendant's
6 motion for summary judgment. Specifically, plaintiffs included what they claim to be Hall's
7 complaints, a counseling notice suspending Hall for one day without pay, and his EEOC charge
8 alleging retaliation. (Docs. # 80-38, 80-40, 80-55). However, as mentioned above, these
9 documents have not been authenticated. (*See* doc. # 90). Thus, they may not be properly
10 considered in deciding the motion for summary judgment.

11 Nevertheless, Hall testified in his deposition that after he complained about his
12 supervisor's purported discriminatory conduct, he received a write-up. (Doc. # 80-2). Further,
13 Ladawndre Stinson, who worked in human resources for defendant, testified in her deposition
14 that Hall received a verbal or written counseling and was also suspended. (Doc. # 80-28).

15 Pursuant to the standard above, timing may provide circumstantial evidence of retaliatory
16 action. *Bell*, 341 F.3d at 865. Further, any adverse employment action, not simply termination,
17 may suffice to prove retaliation. *Cornwell*, 439 F.3d at 1034-35. Therefore, viewing the
18 evidence in the light most favorable to plaintiffs, a factfinder could determine that Hall suffered
19 retaliation in response to his complaints. Accordingly, the court will deny summary judgment on
20 plaintiffs' retaliation claims.

21 D. *Constructive discharge*

22 Plaintiff Hall alleges that he was subjected to discriminatory working conditions that
23 were so intolerable that he was forced to resign from his position. (Doc. # 6). It appears that
24 Hall may be attempting to allege constructive discharge as evidence of retaliation. (Doc. # 80).

25 However, retaliation and constructive discharge are two separate claims subject to
26 different legal standards. Viewing the evidence in the light most favorable to Hall, the court will
27 analyze Hall's constructive discharge allegation as a separate claim as articulated in claim III of
28 his complaint. (Doc. # 6).

**James C. Mahan**
**U.S. District Judge**

1   Hall went on leave from his position with defendant in October 2011, allegedly due to
2   stress from the claimed discrimination and racial comments. (Doc. # 80, 80-2). Hall's physician
3   corroborated that Hall sought leave due to the stressful environment at work, which caused him
4   anxiety and other physical symptoms. (Doc. # 80).

5   Defendant claims that the psychiatric examination of plaintiff Hall is unreliable.
6   However, at this point in time, the court cannot decide this question as a matter of law. Hall has
7   produced sufficient evidence to allow his claim of hostile work environment based on race to
8   proceed.

9   Because it is possible that Hall was subjected to a hostile work environment, it is also
10  conceivable that such pervasive conduct led to Hall's constructive discharge. Again, whether
11  discriminatory conditions rose to a level warranting resignation is unclear, but it cannot presently
12  be resolved as a matter of law. *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989).
13  Accordingly, summary judgment on Hall's claim of constructive discharge will be denied.

**IV.   Conclusion**

Based on the above analysis, the court will grant summary judgment on plaintiffs' hostile work environment claims for sexual harassment and sex discrimination. The court will deny summary judgment on plaintiffs' remaining claims.

For the foregoing reasons,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for summary judgment, (doc. # 70), be, and the same hereby is, GRANTED in part and DENIED in part, pursuant to the foregoing.

DATED September 26, 2014.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 13 -